The court having reviewed the submissions of the parties; and

For the reasons stated in the court's opinion filed this date,

IT IS on this 5th day of MAY, 1987, hereby ORDERED that:

1. Motions of Defendants McBro Planning and Development Co., McCarthy Brothers Construction Co., and Freeman-White Associates, Inc., for a judgment notwithstanding the verdict or a new trial on the issue of liability is DENIED.

2. Motions of Defendants McBro Planning and Development Co., McCarthy Brothers Construction Co., and Freeman-White Associates, Inc., for a remittitur is GRANTED.

3. Defendants' motion for a new trial on the issue of damages is GRANTED, if plaintiffs within 20 days from date hereof, fail to accept the remittitur of all damages in excess of $200,000.00 for plaintiff Thomas Brown, and $25,000.00 for plaintiff Kathy Brown.

**UNITED STATES of America, Plaintiff,**

v.

**HATO REY BUILDING COMPANY, INC., et al., Defendants.**

Civ. No. 79–1669.

United States District Court, D. Puerto Rico.

May 5, 1987.

sition made by the United States of America, Department of Agriculture, on August 23, 1938, hereinafter also referred to as tract No. 13. The acquisition of the land in question was done under an Act of Congress of June 7, 1924, known as the Clark-McNary Act. At all times since 1903, tract No. 13 has been located within the boundaries described in Presidential Proclamation No. 41, of January 17, 1903, 32 Stat. 2029, as the Luquillo Forest Reserve, later renamed the Caribbean National Forest, and within the boundaries of the Caribbean National Forest as redefined on February 9, 1962, by President John F. Kennedy, in Executive Order No. 10992.

Jurisdiction is present pursuant to 28 U.S.C. sec. 1345, since the United States is a plaintiff. Trial of this action was held April 6 and 7, 1987. We find for plaintiff and now enter our findings and conclusions. Fed.R.Civ.P. 52(a).

### I.

Back in the late 1930's, the United States decided to acquire certain lands, known as tract No. 13, to incorporate them into the Caribbean National Forest. The lands in question belonged to Miss Sagrario Aguada Rodríguez, a resident of San Juan, Puerto Rico, now deceased. Before acquiring said lands, the government commissioned Civil Engineer and Land Surveyor Julio Agosto, Jr. to carry out a land survey of the area. Mr. Agosto, also deceased, was then employed by the U.S. Department of Agriculture, Forest Service, Region 8. He proceeded to carry out a survey of the lands belonging to Sagrario Aguada Rodríguez, known to the Forest Service as tract No. 13, located at Guzmán Arriba Ward, Río Grande, Puerto Rico. The survey was completed and Mr. Agosto prepared a survey plan of tract No. 13, also known as the "Pizá" property. The same is dated June 9, 1937. It shows the boundaries of tract No. 13, which the government wished to acquire from Miss Aguada-Rodríguez. The area was calculated to be 1701.936 cuerdas, equivalent to 1652.956 acres. *See* Government's Exhibit 3.

Assistant U.S. Atty. Fidel A. Sevillano, Daniel López-Romo, U.S. Atty., San Juan, P.R., for plaintiff.

Hiram Martínez López, San Juan, P.R., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

FUSTE, District Judge.

The United States filed this action to quiet title to a parcel of land of 41.085 cuerdas which forms part of the Caribbean National Forest, also known as El Yunque, located in Río Grande, Puerto Rico. The parcel in question, hereinafter referred to as tract No. 17, forms part of a land acqui-

At a given point in time after June 9, 1937, the Department of Agriculture became aware that there were several claims of ownership that affected tract No. 13. Following customary practices and procedures, a second survey was prepared by the same land surveyor. The same is dated December 3, 1937, and is entitled Pizá Tract No. 13 Survey Showing Claims.[1] One of the claims had been made by the heirs of a man named Salgado.[2] The same corresponded roughly to a triangle of land formed by drawing a line between points 1725 to D, as per the first Agosto survey of June 9, 1937, Government's Exhibit 3. The exhibit will show that during trial we drew such line to show the triangle. The area in dispute with the heirs of Salgado was identified as tract No. 17. Defendants' Exhibit J, the Agosto Survey Showing Claims, of December 3, 1937, defined in precise terms the nature of the claim. The rough triangle mentioned before was drawn in Defendants' Exhibit J as being the triangle composed by points 1725 to point 1731 to point D to point 1725. Since the Salgado claim was identified in precise terms, the surveyor also drew the specific Salgado claim, a triangle larger in area, composed by points 1725 to point 1731 to point 20 to point 18 to point 15 to point 1725.[3] It is clear that at all times between the two surveys of June 9, 1937 and December 3, 1937, by Mr. Agosto, the government official boundary line, tract No. 13, was the one between point 1725 to point D.

The dispute with the Salgado heirs was put to rest on February 2, 1938. Angel Salgado, Francisco Salgado, Juana Salgado, Raimundo Salgado, and Gumersindo Salgado appeared before an attorney for the government and subscribed a sworn statement to the effect that they were not the owners of tract No. 17. They further admitted that their only interest in nearby land was an area much more to the North than the said parcel No. 17. *See* area stripped in blue lines by the undersigned judge, Defendants' Exhibit J.[4] The Salgados attested that they had examined the map prepared by Engineer Agosto of the United States Forest Service, dated December 3, 1937, the survey of which was properly notified to all abutting land owners who were present. Furthermore, they admitted that tract No. 17, appearing on the said map starting at point 1725 to point 15, to point 18, to point 20, to point 8, to point 1725, did not belong to them and had never been their property. Furthermore, they identified that their property was located much more to the North than the said parcel No. 17. The Salgados further declared that they had carefully examined their titles in connection with the above map and made available their statement for further use by the Forest Service.[5]

The matter being cleared, the Department of Agriculture acquired tract No. 13,

---

1. As stated, tract No. 13 is also known as the Pizá farm; therefore, it was at times identified by said name.

2. The Estate of Salgado is identified in the various plans and documents as "Sucesión Salgado."

3. This larger triangle is tract No. 17 as claimed by the Salgado heirs, with an area of 41.085 cuerdas, equivalent to 39.90 acres.

4. The Sworn Statement, Government's Exhibit 14, was duly authenticated under Fed.R.Evid. 901(b)(8), a document creating no suspicions and over twenty years or more at the time the same is offered. In turn, the same is admissible against defendants pursuant to Fed.R.Evid. 1007 as a written admission of the predecessors in title as claimed by defendants. Furthermore, the probative value of the evidence is outweighed by any prejudice. All the subscribing Salgados are now dead. Fed.R.Evid. 402–403.

5. Defendants claim that the Salgados were induced to sign the statement without knowing what it realy entailed. We cannot agree. Leaving aside distances and courses (technical data), the statement is a plain admission of lack of title over tract No. 17. We do not give great importance to the November 18, 1938 memorandum by A.K. Thurmond, District Ranger, directed to the Forest Supervisor, on the subject, Document No. 5, Exhibit 14. Obviously, he did not know of the Salgado statement. Attorney Camuñas' memo to the Forest Supervisor, dated November 21, 1938, brought to the attention of Thurmond and others that the Salgado claim had been put to rest by the mentioned sworn statement. As a matter of fact, Thurmond's fear never materialized. The Salgados did not sue the government.

consisting of 1701.936 cuerdas, equivalent to 1652.956 acres, in August of 1938. Deed of Sale No. 29, of August 23, 1938, was executed by and between Miss Sagrario Aguada Rodríguez, as seller, and the United States of America, Department of Agriculture, as buyer. The acquired land included tract No. 17, and the boundaries of tract No. 13 were those identified not only in the deed, but also on the Agosto survey of June 9, 1937, Government's Exhibit No. 3. A copy of this exhibit formed part of the original deed. The deed of sale was filed with the Registry of Property of Río Grande. The same was duly registered with fee simple title in the United States at page 30, Volume 25, of Río Grande, property number 1477, second inscription, dated September 14, 1938.

## II.

The present dispute with defendants is the following:

The record reflects that the defendants acquired title to lands which, in their opinion, correspond to tract No. 17, through deeds of sale duly registered before the Registry of Property. This being the case, we now state how this occurred.

At the Registry of Property of Río Grande, there exists a property identified as property number 158. The same has an area of 200 cuerdas. The last recorded sale of the property dates back to June 20, 1913. On said date, Manuel Pimentel y Castro and his wife Isaura Quiñones y Abarín bought the property from Julia Serra y Polau, as per deed No. 282, executed on June 20, 1913, before Notary Public Damián Monserrat. This transaction was duly registered with fee simple title in Mr. & Mrs. Pimentel Castro, at page 219 vuelto (back side of page 219), Volume 8, of Río Grande, property number 158, eighth inscription.

Manuel Pimentel y Castro died on August 15, 1913. His estate was liquidated through deed No. 46, dated April 9, 1915, executed before Notary Public José G. Torres. Property number 158, the 200–cuerdas' farm described above, was acquired by Pimentel's heirs, to wit: Luis Pimentel Cardona, Manuel Pimentel Cardona, and José Pimentel Quiñones. These three heirs sold the property in question to Tomás Salgado Burgos through deed No. 108, dated August 4, 1915. The two transactions described in this paragraph were not recorded in the Registry of Property.

On January 10, 1931, Tomás Salgado Burgos sold property number 158 to Angel Salgado, Juana Salgado, Francisco Salgado, Raimundo Salgado, and Gumersindo Salgado, the same Salgado brothers and sister who had relinquished title to tract No. 17. The transaction was reduced to writing through public deed No. 2, of January 10, 1931, the notary public being Luis Sánchez-Vahamonde. This transaction was never filed before the Registry of Property for recording.

An examination of the available evidence shows that the Salgados decided to divide what they understood was their property. Instead of recording the deeds which we have described in this part of the findings so as to establish continuity of title to property number 158 at the Registry of Property, the Salgados filed an action before the Superior Court of Puerto Rico, San Juan Part (then known as District Court), to register their property as if they previously lacked a recordable ownership title.[6] The proceeding, known in Spanish as an "Expediente de Dominio" (action for registration of property), was filed under article 395 of the Mortgage Law of 1893, 30 L.P.R.A. sec. 737 (1955). Article 395 provided and required as follows:[7]

> Sec. 737. **Record of ownership without written title**
>
> *Any owner of property having no written title of ownership* whatever be

6. Of the original five Salgado brothers and sister, only three appeared as *ex parte* petitioners in local court, to wit: Gumersindo, Juana, and Raimundo.

7. The Mortgage Law of 1893 was repealed and substituted by a new mortgage law in 1979. *See In re Besenbruch-Hoffman of Puerto Rico, Inc.,* 69 B.R. 408 (JAF) at n. 2 (D.P.R.1987); *In re Porto Rico Iron Works,* 71 B.R. 90, n. 1 (D.P.R. 1987).

the period of the acquisition, may record such ownership upon proving it under the following formalities:

1. He shall submit to the judge of the court of first instance of the judicial district in which the property is situated, or to the one of the district in which the larger portion thereof is situated, if the estate be located in more than one district, a statement of the manner in which he acquired it and any legal proof of such acquisition which he may have to offer, and praying that, after citation of the person from whom the property may have been acquired, or of his predecessor in interest, and of the representative of the department of public prosecution, such evidence be admitted and a declaration of his rights made.

2. The judge shall refer this petition to the representative of the department of public prosecution, shall cite the person from whom the property was acquired or his predecessor in interest, if known, and the persons who may have any property right in said real property; he shall admit all pertinent evidence which may be offered by the petitioner, by the interested persons cited or by the representative of the department of public prosecution within the term of 180 days, and he shall summon the unknown persons who might be prejudiced by the record applied for, by means of notices which shall be posted in public places and inserted three times in the official newspapers of the respective colonial Province, in order that they may appear if they wish to assert their rights.

If the persons to be cited should be absent, the procedure established in rule 5 of section 733 of this title shall be followed in making the citations.

3. Upon the expiration of this period, the judge will receive written pleadings upon the claims and evidence which may have been presented by the representative of the department of public prosecution or by the other persons who may have attended the proceedings; and in view of their allegations he shall decide on the evidence with an impartial judgment and declare whether or not the ownership of the property involved has been established.

4. The representative of the department of public prosecution or any of the persons interested may appeal from this decision; and should they do so, the appeal shall be heard and decided according to the procedure established for incidental issues in the law of civil procedure.

5. If said decision is accepted or affirmed, it shall constitute a sufficient title for the record of the ownership.

6. When the value of the real property shall not exceed 1,000 pesos, the proceedings which, according to rule 3, must be had in writing and submitted to the representative of the department of public prosecution and to the parties interested, shall be oral; and the appeal, in a proper case, shall conform to the procedure established for appeals of this character in actions of "lesser import" (menor cuantía). (Emphasis added).

Unfortunately, the court file of said action for registration of property is not available. The court-ordered report by title investigator Justo García Iñiguez confirmed that said *ex parte* file, Civil No. 51–3187, was lost by fire many years ago while the Superior Court of San Juan was located in its Old San Juan headquarters.

We now find that the Salgado's acted illegally in requesting the registration of what they thought to be their 200–cuerdas' property. They knew that their title could be recorded by the mere filing of the deeds to establish continuity. By recurring to the procedure established by article 395 of the Mortgage Law of 1893, they succeeded in creating a fictitious immatriculation. Property number 158 remained registered. In turn, a new property number 1864 was created by virtue of court order. Article 395 of the Mortgage Law of 1893 did not require that owners of adjacent properties be summoned in proceedings to establish a dominion title and, therefore, any failure to cite the owners of contiguous lands, including the United States, did not impede the Registrar of Property from recording the 200 cuerdas (actually recorded as 150 cuerdas) as a new property, known as property

number 1864.[8] *Rivera v. The Registrar of Property*, 15 P.R.R. 379 (1909).[9]

Property number 1864 is the source of the chain of titles leading to the present defendants. However, it is difficult to determine with certainty where in Río Grande or in the neighboring area of the Caribbean National Forest the same lies. An examination of the descriptions of property number 158 (200 cuerdas), property number 1864 (150 cuerdas), and tract No. 17 (41.085 cuerdas), will confirm the above. We now find that tract No. 17, where defendants claim an interest, is not the same property as property number 158 or property number 1864, from which defendants' thirty-year-plus old titles proceed.

First of all, tract No. 17 is a small tract of land consisting of 41.085 cuerdas. Property number 158 consists of 200 cuerdas and property number 1864 consists of 150 cuerdas. If we are to guide ourselves by area considerations, the differences in cuerdage is simply too great to allow identity. Furthermore, the boundaries of properties 158 and 1864 simply do not correspond to tract No. 17. The boundaries as per Registry of Property are the following:

Property number 158, page 219 (vto.), Volume 8, Río Grande, eighth recording, appears described as follows:

RUSTIC: Land located in the Guzmán Arriba Ward, Río Grande jurisdiction, composed of 200 cuerdas, equivalent to 78 hectareas, 60 areas, and 79 centiareas, with boundaries on the East, with lands belonging to Juan Pizá; *on the West, with the Río Grande River*; on the North, with lands belonging to Eusebio Arroyo, Julián Hernández, Dolores Ayala, others belonging to Fabián and Wenceslao Carrillo, Julián Ortiz, and those belonging to Zenón y Ascacio Carrillo and Ventura Carrillo, wife of Juan Esteban Maldonado; and on the South, with lands belonging to Eusebio Ramos and others belonging to Sancho Quiñones. (Emphasis added).

Property number 1864, first inscription dated April 14, 1953, makes reference to civil case 51–3187, District Court of Puerto Rico, San Juan Part, recorded in the name of Gumersindo, Raimundo, and Juana Salgado Burgos. Page 147, Volume 34 of Río Grande, describes the property as follows:

RUSTIC: Composed of 150 cuerdas located in Guzmán Arriba Ward, Río Grande, equivalent to 62 hectareas, 10 areas, and 3 centiareas; contiguous on its North boundary, with Perfecto Ortiz, Juan Santiago, Nemesio Medina, Ricardo Pérez, Francisco Mercado, Mateo Pinto, and Ciriaco Pinto; on its South boundary, with Arcadio Rosa, José Ortiz, Tomás Galves, Tomás Torres, José Meléndez, and Sucesión Matos (Estate of Matos); on the East boundary, contiguous to the Luquillo National Forest; and on the West boundary, with Castor Fontanet, Santiago Quiñones, and Gumersindo Santiago.

As seen, property number 158 had as its West boundary a fixed landmark, the Río Grande River. That alone, leaving aside cuerdage or size considerations, rules out identity with tract No. 17. Defendants' Exhibit J. Property number 1864, composed of 150 cuerdas, three times the size of tract No. 17, seems to correspond, if at all, with the Salgado property located Northwest of tract No. 17, that is, the property that the Salgados claimed as being their only property when they executed the sworn statement of February 2, 1938, Government's Exhibit 14. The Southern boundary, as described above, mentions Sucesión Matos (Estate of Matos), identified as tract No. 18, Government's Exhibit J. The Eastern boundary appears in the Registry of Property as being the Luquillo National Forest, also identified as tract No.

---

**8.** The Forest Service has a complete file on the Caribbean National Forest lands and acquisitions. The evidence shows that such file contains no document that would give notice to the United States of the filing of civil action 51–3187 by the Salgado's.

**9.** The only explanation to the difference between 200 cuerdas in property number 158 and 150 cuerdas in property number 1864 is the fact that two of the Salgado's did not participate in the *ex parte* judicial proceeding. It is possible that the remaining fifty cuerdas belonged to those nonparticipants.

13, formerly Pizá Farm, Government's Exhibit J.

Therefore, as stated, we find that tract No. 17, where defendants claim a property interest, is not related to, and is not the same, tract of land as tracts Nos. 158 and 1864, from which defendants claim their various registered thirty-year plan titles proceed from.[10]

## III.

■ The evidence established that tract No. 17 was part of tract No. 13 acquired by the government in 1938 as lands for the Caribbean National Forest. The evidence further established that property number 158 or 1864 does not physically correspond to tract No. 17, where the defendants claim title and have erected some structures.

Assuming for argument purposes that indeed tract No. 17 and property number 158 or 1864 are the same, defendants advance the argument that they have acquired a valid title by adverse possession, prescription or by the lapse of time. We now analyze said argument and decide against defendants. We examine all possibilities and prescription periods.

Article 395–A of the Mortgage Law of 1893, enacted May 12, 1937, 30 L.P.R.A. sec. 738 (1955), provides as follows:

Sec. 738. **Unauthorized records validated after 20 years**

Notwithstanding the provisions of the preceding sections of this chapter, after twenty years have elapsed, counting from the date of the first record of the real property in the registry, even if such record is not expressly authorized by any provision of law, or the document from which the record was made is not by its nature recordable, said record shall for all legal purposes be considered, as regards third parties, as a record of ownership, provided the nullity of the title re-

corded, or its judicial impugnation, do not appear from the record of the real property, and no judicial proceeding contesting it is instituted within six (6) months, counting from the date of effectiveness of this Act.—Mortgage Law, 1893, art. 395–A, added May 12, 1936, No. 73, p. 372; May 12, 1937, No. 96, p. 233, eff. May 12, 1937.

Since we have determined that property number 1864 was improperly or illegally registered, it may be argued that if it corresponded to tract No. 17, the lapse of twenty years validated the title recorded by court action in April 14, 1953 (Civil No. 51–3187).

Notwithstanding article 395–A of the Mortgage Law of 1893, it could be further argued that adverse possession of less than twenty years was enough to consolidate dominion and ownership in defendants. Article 1849 of the Civil Code, 31 L.P.R.A. sec. 5270 (1930), provides as follows:

Sec. 5270. **Recorded Title**

Against the title recorded in the registry of property, the ordinary prescription of ownership or of property rights shall not obtain to the prejudice of a third person, except by virtue of another title similarly recorded, and the time shall begin to run from the date of entry of the latter.

Although defendants claim continued possession of over thirty years, we grant, for the sake of argument, that since both parties to the controversy have recorded titles, ordinary prescription terms would apply, that is, the term of ten years of article 1857 of the Civil Code, 31 L.P.R.A. sec. 5278, or in the worst-case analysis, the twenty-year term contemplated in article 395–A of the Mortgage Law of 1893.

Assuming that defendants claim any title other than property number 1864 [11] over tract No. 17 as they also do, articles 1840,

---

**10.** Property number 1864 was subdivided into three separate properties. Property number 1864 ceased to exist. One of the surviving properties, number 2354, is the matrix for the eventual segregation that now constitute the defendants' properties in litigation.

**11.** We further grant for purposes of argument that even though the Salgado's acted improperly and illegally in recording property number 1864 by recurring to court action, the defendants acquired proper title in good faith. It is impossible to tell from a title search that property number 1864 was improperly recorded through the "expediente de dominio" mechanism.

1850, 1852, 1857, and 1859, 31 L.P.R.A. secs. 5261, 5271, 5273, 5278, and 5280 (1930), would come into play:

Sec. 5261. **Possession in good faith and under proper title required**

For ordinary prescription of ownership and other property rights, it is necessary to possess things in good faith and under a proper title, during the time specified by law.—Civil Code, 1930, sec. 1840.

Sec. 5271. **Good faith defined**

Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same, and could convey his title.—Civil Code, 1930, sec. 1850.

Sec. 5273. **Proper title defined**

By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question.—Civil Code, 1930, sec. 1852.

Sec. 5278. **Term of prescription for real property and rights**

Ownership and other property rights in real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title.—Civil Code, 1930, sec. 1857.

Sec. 5280. **Prescription by possession without title or good faith**

Ownership and other property rights in real property shall also prescribe by uninterrupted possession of the same for thirty years without the necessity of title nor good faith and without distinction between present and absent persons, with the exception mentioned in section 1653 of this title.—Civil Code, 1930, sec. 1859.

Although defendants obviously have the time needed to request title by prescription, whether ten years, twenty years or thirty years, we see two obstacles that stand in defendants' way to success. First, we have determined that tract No. 17 is not property number 158 or 1864. If at all, they have acquired title somewhere else. The source properties do not coincide physically to tract No. 17. Second, the argument of title by prescription is being made against the sovereign. The argument made against an ordinary citizen may have some weight; however, such argument is being opposed to the United States, a sovereign. Puerto Rico and Federal case law have repeatedly decided that property cannot be acquired by prescription against the sovereign. *Jiménez v. Municipio*, 70 D.P.R. 517 (1949); *People v. Rojas*, 53 D.P.R. 121 (1938); *People v. Municipality of San Juan*, 19 P.R.R. 625, 635 (1913); *People v. Dimas*, 18 D.P.R. 1061 (1912); Op.Sec.Just. No. 42, 1955. Federal case law is also in accord. *United States v. Stubbs*, 776 F.2d 1472 (10th Cir.1985); *United States v. Osterlund*, 505 F.Supp. 165, aff'd., 671 F.2d 1267 (10th Cir.1982); *United States v. Denby*, 522 F.2d 1358, reh. denied, 525 F.2d 693 (5th Cir.1975).

This simply means that title over tract No. 17 resides in the United States, as owner of tract No. 13, acquired from Miss Sagrario Aguada Rodríguez, which tract is also known as the Pizá property. This, of course, is without prejudice of defendants' rights as possessors in good faith.

**IV.**

We find that even though defendants lose their title to land within tract No. 17, the United States, as the land owner, has certain obligations towards those defendants that constructed or erected structures in those lands within tract No. 17 in good faith and under the belief that they had bought such land.[12] Puerto Rico's Civil Code dispositions on point may be applied to the facts of this case. Federal courts may employ state law in an action involving the United States as a matter of logic, common sense or of basic justice. *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). This is specially true when, as here, the case involves a

12. There is no excuse in equity for the United States to have allowed said constructions to take place. The forest was constantly supervised. The government knew or should have known that the defendants were inside the forest property. If the government allowed the construction to progress, it must bear the consequences.

strong public policy behind this type of remedy based on the most basic notions of fair play and justice. When the sovereign filed this action, it came into court on an equal basis with the defendants. C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* sec. 3652; *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.*, 349 F.Supp. 964, 977 (D.P.R. 1970). Therefore, we find that the government is bound by article 297 of the Civil Code, as amended, 31 L.P.R.A. sec. 1164. The article in question states as follows:

### Sec. 1164. Rights of owner of land built upon in good faith

The owner of the land sown or planted upon in good faith shall have the right to appropriate as his own the sowing or planting, by previously paying the compensation specified in sections 1468 and 1469 of this title, or to compel the person who planted to pay the price of the land, and the person who sowed, the corresponding rent.

*The owner of the land which has been built upon in good faith* shall have the right to appropriate as his own the work, by previously paying to the owner of the work the cost of the materials and labor, or the cost of reproducing the work at the time the owner of the land exercises his right, deducting depreciation, whichever is greater, or to compel the person who constructed to pay the value of the land.—Civil Code, 1930, sec. 297; June 16, 1964, No. 56, p. 156, eff. June 16, 1964. (Emphasis added).

The Civil Code grants the government two options, that is, to buy the buildings there erected or to sell the land to those who built. Obviously, if an adverse claimant has not built any structure, then, of course, the government has no obligation towards the adverse claimant.

In this case, the government has no excuse or valid reason, express or implied, to oppose the good faith of defendants. All of them acquired from the person who, according to the Registry of Property, had the right to sell. They were not parties in the action to register property ("expediente de dominio") which the Salgados improperly brought before a court in 1951. They recorded their title as subsequent purchasers of properties originating in property number 1864. They are *bona fide* purchasers and those who built are *bona fide* builders. In ordinary circumstances, this good-faith status gives rise to proprietary rights by adverse possession as discussed before. *Lizardi v. Caballero*, 65 P.R.R. 77 (1945). The fact that adverse possession cannot operate against the sovereign does not mean that the sovereign has no obligation to defendants as per article 297 of the Civil Code. *People v. Municipality of San Juan*, 19 P.R.R. at 635–37. The buildings erected in tract No. 17 by defendants were obvious. Personnel from the U.S. Forest Service saw them. They did nothing to stop them until someone became aware of the problem and this case was filed.

The evidence shows that good faith was present in defendants at all times until 1975. However, in the case of defendant Hato Rey Building Company, Inc., we must find that at a given point in time on or around August 1972, Hato Rey Building Company, Inc. became suspicious about the fact that their property within tract No. 17 had title and/or boundary identification problems. Mr. Francisco Silva, a licensed civil engineer and land surveyor, a stockholder in Hato Rey, prepared a survey of their property. Defendants' Exhibit I. Silva fixed the Northern boundary of the Hato Rey property and made certain that at least three Federal Government employees would attest as to correctness.[13] The

---

**13.** The fact that these U.S. Government employees so represented does not bind us. An agent or employee of the United States does not compromise the government when acting outside the scope of his duties. *See Saulque v. United States,* 663 F.2d 968, 976 (9th Cir.1981) (estoppel does not apply against government where it is acting in its sovereign capacity); *All State Ins. Co. v. Adana Mortg. Bankers,* 725 F.2d 1324 (11th Cir.1984) (persons dealing with government cannot bind it by relying upon conversations with officials).

A forester's duty is to "in all ways that are practicable, aid in the enforcement of the laws of the states or territories with regard to stock, for the prevention and extinguishment of forest fires, and for the protection of fish and game and with respect to national forest...." 16

exhibit shows that a Forester, Lawrence Hill, agreed with the boundary of Hato Rey's property with the Caribbean National Forest. In turn, he had Mr. Hill sign his drawings in conformity therewith, mentioning that land surveyor Carlos Ramírez and Forester José Lefebre had also been in agreement.

We find that at this point in time, good faith on the part of Hato Rey had turned into a defensive attitude. It is illogical to say, as Mr. Silva did at trial, that Hato Rey bought their tract No. 17 property without having previously checked the Northern boundary. A civil engineer and land surveyor would not usually act in such confidence, even if the adjoining property belonged to the government. Furthermore, we find from a subsequent government survey made in 1975, Joint Exhibit I, that 21 months after the Silva survey, Ralph H. Posey, cadastral surveyor, was called in to survey parcels A and B, claimed against the government by Wendell Edwards [14] and Hato Rey Building Company, Inc. If title and precise location were so clear in Mr. Silva's mind as he claimed at trial, then there was no need to present a formal claim along with Edwards, against the government. Eventually, such claims motivated the suit in question.

### V.

In conclusion, we find that at all material times since 1938, the United States government has been the lawful and rightful owner of tract No. 13, also known as the Pizá property, including tract No. 17. The government is entitled to quiet title to said parcel of land where the defendants claim an adverse interest. We further find that tract No. 17 is not property 158 or 1864, Registry of Property of Río Grande. The evidence received indicates that if at all, property 158 or 1864 corresponds to the other Sucesión Salgado property to the North of tract No. 17 and outside the boundary of tract No. 13. Even though

defendants may have been in adverse possession to gain property interests against a private party over tract No. 17, they cannot gain such title by adverse possession against the sovereign. Furthermore, the government is obliged under the terms and conditions of article 297 of the Civil Code, 31 L.P.R.A. sec. 1164, regarding building or construction made in good faith by some defendants on or before August 1975, when it was obvious to all concerned that there existed a genuine dispute as to title and location of the properties acquired by defendants. The Registry of Property of Río Grande will be notified with the terms of these findings, conclusions, and order for purposes of public notice to third parties. The Registrar of Property will note the entry of this judgment in the following properties:

1. Property No. 2,354, page 160, Volume 65, Río Grande, Puerto Rico, Sigfredo Jiménez and Aida Torres.

2. Property No. 3041, page 16 (vto.), Volume 69, Río Grande, Puerto Rico, Rafael L. Rodríguez Merced and María Jesús Padilla.

3. Property No. 3065, page 139 (vto.), Vol. 69, Río Grande, Puerto Rico, Antonio J. de Haro Cardi and Matilde Castellanos García de Quevedo.

4. Property No. 3066, page 145 (vto.), Vol. 69, Río Grande, Puerto Rico, manuel Fuentes Rodríguez and Blanca Hernández Rodríguez.

5. Property No. 5411, page 264, Vol. 105, Río Grande, Puerto Rico, Francisco G. Salas and Carmen Reyes Padró.

6. Property No. 4010 (amended), page 200, Vol. 81, Río Grande, Puerto Rico, Roque Sierra Cruz and Gladys A. Sánchez Cruz.

7. Property No. 4898, page 40, Vol. 93, Río Grande, Puerto Rico, Héctor Manuel Aponte Ortiz, Víctor Aponte Ortiz, and Laura Ramos.

---

U.S.C. sec. 553. In no way he has the duty of fixing boundaries. Such act is null. *See De Vilbis v. Small Business Administration,* 661 F.2d 716 (8th Cir.1984); *Robinson v. Vollert,* 602

F.2d 87 (5th Cir.), *reh. denied,* 609 F.2d 1177 (1980).

**14.** Wendell Edwards was one of the defendants' predecessors in title.

8. Property No. 5527, page 216, Vol. 108, Río Grande, Puerto Rico, Carlos R. Chinchilla and Iris Jiménez de Chinchilla.

9. Property No. 6812, page 13, Vol. 135, Río Grande, Puerto Rico, Rain Forest Lodge, Inc. (Juan de Jesús and Manuel de Jesús).

10. Property No. 5908, page 92, Vol. 118, Río Grande, Puerto Rico, Víctor Martínez and María Socorro Ortiz.

11. Property No. 5984, page 220, Vol. 119, Río Grande, Puerto Rico, Juan A. Cintrón and Milagros M. Vélez.

12. Property No. 5920, page 166, Vol. 118, Río Grande, Puerto Rico, Santiago Ortiz Anguita and Frances García García.

13. Property No. 5871, page 120, Vol. 117, Río Grande, Puerto Rico, Edgardo Torres and María Luisa Castro Torres.

14. Property No. 5869, page 99 (vto.), Vol. 117, Río Grande, Puerto Rico, Luis F. Valentín and Flora Torruella de Valentín.

15. Property No. 5868, page 92, Vol. 117, Río Grande, Puerto Rico, José Barquero and Lillian Díaz de Barquero.

16. Property No. 158, page 219, Vol. 8, Río Grande, Puerto Rico, Marta Salgado, Marta Salgado de Rexach, Sucesión Salgado.

17. Property No. 2354, page 160, Vol. 65, Río Grande, Puerto Rico, Hato Rey Building Company, Inc.

Any additional notice to the Registry of Property shall be done by writ of execution of judgment. Today's ruling is without prejudice of the right of defendants to sue their predecessors in title under the applicable local laws.

Judgment will be entered accordingly.

IT IS SO ORDERED.