UNITED STATES of America, Plaintiff, Appellee,

v.

HATO REY BUILDING COMPANY, INC., Defendant, Appellant.

No. 87–1671.

United States Court of Appeals, First Circuit.

Heard March 2, 1989.
Decided Sept. 27, 1989.

---

Hiram Martínez López with whom Edda Ivette Rodríguez, San Juan, and Hiram Martínez López Law Offices were on brief, for defendant, appellant.

Sarah P. Robinson, Dept. of Justice, Washington, D.C., with whom Donald A. Carr, Acting Asst. Atty. Gen., Daniel F. López–Romo, U.S. Atty., San Juan, P.R., Fidel A. Sevillano Del Rio, Asst. U.S. Atty., and Dirk D. Snel, Dept. of Justice, Washington, D.C., were on brief, for plaintiff, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

TORRUELLA, Circuit Judge.

Defendant appeals a judgment of the district court which quieted title to a parcel of land in favor of plaintiff, the United States. Although the facts are set out fully in the district court's opinion, 660 F.Supp. 1340 (D.P.R.1987), we will restate those that are relevant to this appeal.

In the late 1930s the United States Department of Agriculture ("the Department") decided to acquire certain lands in the Municipality of Rio Grande, Puerto Rico, for incorporation into the Caribbean National Forest. A survey was conducted of the property to be acquired, known as "tract No. 13." Before the transaction was effected, the Department became aware that the heirs of Tomás Salgado ("the Salgados") had claims to a portion of tract No. 13. This parcel of land, identified as tract No. 17, became the subject of the present controversy.

On February 2, 1938, the Salgados appeared before an attorney for the government and subscribed a sworn statement to the effect that they were not the owners of tract No. 17. Later that same year the Department acquired tract No. 13 (which purportedly included tract No. 17). A certified copy of the deed of sale was duly recorded in the Registry of the Property of Puerto Rico.

There seems to be no dispute as to the fact that at all times after 1938 ownership of tract No. 13 has been recorded at the Registry of the Property of Puerto Rico in favor of the United States. At the Registry, however, there appears a property recorded in favor of defendant Hato Rey Building Co., Inc. ("Hato Rey"). The origin, transactions, and records concerning this property, although not entirely clear, appear to be as follows.

In 1913, a property, known as No. 158, was acquired by Manuel Pimentel and his wife. The transaction was duly recorded at the Registry of the Property. When the Pimentels died, the property was acquired by their heirs through a deed. Pimentel's heirs in turn sold the property to Tomás Salgado. Salgado then sold the property in 1931 to his sons and daughter. These buyers are the same ones who had relinquished title to tract No. 17. None of these transactions were recorded at the Registry. Thus, property No. 158 remained recorded at the Registry in favor of the Pimentels.

Instead of recording the previous three transactions so as to establish continuity of title to property No. 158, in 1951 the Salgados filed an action before the district court of San Juan to register the parcel as if it had not ever been recorded at the Registry.[1] The court ordered the registration of the property in favor of the Salgados and the Registrar recorded in their favor a new property, property No. 1864. It is not clear from the record whether properties Nos. 1864 and 158 are one and the same.

Once the Salgados were the Registry owners of property No. 1864, they sold it to a third party which in turn sold it to another third party. After several transactions over a period of 10 to 15 years, the property finally appeared recorded at the Registry in favor of Hato Rey, who apparently had purchased it in good faith.

---

* Of the District of Massachusetts, sitting by designation.

1. This action, known as an *"expediente de dominio"* was filed under Article 395 of the Mortgage Law of 1893, 30 L.P.R.A. § 737 (1966) (repealed by Act No. 198 of August 8, 1979, § 254).

Hato Rey now claims an interest in tract No. 17 based on their recorded title in property No. 1864. The district court, however, found that tract No. 17 and property No. 1864 are different parcels of land. Because only the United States has a recorded title in tract No. 17, the court held for plaintiff. The court added that even if both properties were indeed one and the same, Hato Rey could not gain ownership of the parcel because real estate cannot be acquired by adverse possession against the sovereign.

On appeal, Hato Rey's initial argument is that property No. 1864 is indeed within tract No. 17.[2] We need not disturb the court's finding that tract No. 17 is not property No. 1864. Even if both the United States and Hato Rey had registered titles to tract No. 17, it is undisputed that the United States recorded its title prior to the Salgados. Under Puerto Rico Civil Code art. 1849, 31 L.P.R.A. § 5270 (1968), the ordinary prescription of property rights against title recorded in the Registry of the Property can only be attained by virtue of another similarly recorded title. Thus, the United States is the rightful owner of the property unless Hato Rey proves adverse possession. This takes us to the real issue in this case: can Hato Rey gain title to the property through adverse possession against the United States?

We hold that the United States cannot be stripped of its recorded title to the property by Hato Rey. The public policy embodied in the maxim *nullum tempus occurrit regi* (time does not run against the King) excludes the operation of adverse possession against the United States. *See United States v. Thompson,* 98 U.S. 486, 25 L.Ed. 194 (1879). This principle has been explained by the Supreme Court as follows: "When the United States becomes entitled to a claim, acting in its governmental capacity, and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement." *United States v. Summerlin,* 310 U.S. 414, 417, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940). *See Texas v. Louisiana,* 410 U.S. 702, 93 S.Ct. 1215, 35 L.Ed.2d 646 (1973); *United States v. California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); *United States v. Pappas,* 814 F.2d 1342 (9th Cir.1987); *United States v. Stubbs,* 776 F.2d 1472 (10th Cir. 1985); *United States v. 1,629.6 Acres of Land,* 503 F.2d 764 (3d Cir.1974); *Engel v. United States,* 258 F.2d 50 (6th Cir.1958).

To escape from the overwhelming authority that supports the United States' position, Hato Rey contends that under Section 8 of the Organic (Foraker) Act, 31 Stat. 77 (1900), the United States expressly elected to be ruled and subjected to the laws relating to private property in Puerto Rico.[3] *Porto Rico v. Fortuna Estates,* 279 F. 500 (1st Cir.), *cert. denied,* 259 U.S. 587, 42 S.Ct. 590, 66 L.Ed. 1077 (1922).

In *Fortuna Estates,* the government of Puerto Rico brought an action of ejectment against the possessor of a certain parcel of land. Defendant claimed, *inter alia,* that it had acquired title to the land in dispute through adverse possession. The government maintained that inasmuch as the United States[4] acquired the land from Spain on April 11, 1899 by the Treaty of Paris, the prescription period was tolled, as prescription will not run against the United States.

The court held that in this particular instance the United States had sanctioned the acquisition of property against it, as a sovereign, by reaffirming the laws in effect in Puerto Rico before the change of sover-

**2.** The United States had also appealed. Its appeal was subsequently dismissed.

**3.** Section 8 of the Foraker Act reads as follows: That the laws and ordinances of Puerto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this Act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative. 31 Stat. 79.

**4.** Apparently, Puerto Rico subsequently acquired title to the lands in dispute from the United States. *Fortuna Estates,* 279 F.2d at 508.

eignty, including those relating to adverse possession. The rationale was that before the acquisition by the United States of the property from Spain through the Treaty of Paris, a general military order was issued continuing all laws in Puerto Rico. This order was ratified in 1900 by Section 8 of the Foraker Act. Because the United States had acquiesced to the application of the Puerto Rico statutes regarding adverse possession, the prescriptive period was not tolled by United States' ownership of the land.

Even assuming the continued validity of *Fortuna Estates*, Hato Rey faces an unsurmountable hurdle. Section 8 of the Foraker Act continued in effect until the enactment of the Organic (Jones) Act, 39 Stat. 951 (1917), which contained an analogous provision. *See* Jones Act, sec. 57, 39 Stat. at 968. However, about a year *before* the Salgados brought their action to register the land in dispute, Congress passed Pub.L. No. 600, 64 Stat. 320 (1950), which repealed the relevant provision of the Jones Act. This provision is crucial to the finding of the *Fortuna Estates* court that the United States had sanctioned the acquisition of a prescriptive title against it. Thus, at least as to possessions occurring after 1950, *Fortuna Estates* is no longer applicable. As the Salgados and Hato Rey recorded their title after 1950, they cannot acquire title against the United States through adverse possession.

Hato Rey arguably could claim title by virtue of Salgado's possession before 1950. However, without recorded title, Hato Rey could only prevail if the Salgados claimed possession "in the capacity of an owner, public, peaceful, and uninterrupted" for a period of thirty years. Puerto Rico Civil Code Articles 1841 and 1859, 31 L.P.R.A. §§ 5262 and 5280 (1968). Such a claim is defeated by the Salgados' recognition in 1938 before a government attorney that they had no interest in the property.

Finally, we reject summarily Hato Rey's reliance on 43 U.S.C. § 1068, which provides for issuance of property ownership to certain claimants against the Department of the Interior. Hato Rey does not claim

that the requirements of that statute are met, especially considering that the property in the case at bar was not acquired by the Department of the Interior.

*Affirmed.*