EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Administración de Terrenos<br><br>Peticionaria<br><br>v.<br><br>Ángel Rivera Morales, Margarita Ortiz Carrasquillo, por sí y en representación de la Sociedad Legal de Gananciales que juntos componen; Barry Duncan<br><br>Recurridos | Certiorari<br><br>2012 TSPR 157<br><br>187 DPR ____ |

Número del Caso: CC-2011-339

Fecha: 22 de octubre de 2012

Tribunal de Apelaciones:

      Región Judicial de Fajardo

Abogados de la Parte Peticionaria:

      Lcdo. Carlos E. Cardona Fernández
      Lcda. Evelyn Meléndez Figueroa

Abogados de la Parte Recurrida:

      Lcdo. Miguel Rosado Rivera
      Lcdo. Wilfredo Padilla Soto

Materia: Prescripción adquisitiva (usucapión) – adquisición de terrenos que pertenecieron al Gobierno de los Estados Unidos; doctrina *nullum tempus occurit regi*

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de Terrenos

Peticionaria

v.

Ángel Rivera Morales, Margarita Ortiz Carrasquillo, por sí y en representación de la Sociedad Legal de Gananciales que juntos componen; Barry Duncan

Recurridos

Certiorari

CC-2011-0339

Opinión del Tribunal emitida por el Juez Asociado Señor Rivera García

En San Juan, Puerto Rico, a 22 de octubre de 2012.

> "Sometimes it is said that, if a man neglects to enforce his rights, he cannot complain if, after a while, the law follows his example".[1]

Comparece la Administración de Terrenos de Puerto Rico (en adelante, Administración o peticionaria) mediante recurso de *certiorari* y nos solicita que revoquemos una sentencia emitida el 29 de marzo de 2011 por el Tribunal de Apelaciones. Esta, a su vez, confirmó una sentencia dictada por el Tribunal de Primera Instancia (T.P.I.) a favor de los recurridos, Ángel Rivera Morales, Margarita Ortiz Carrasquillo

---

[1] Oliver Wendell Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 476 (1897).

y la Sociedad Legal de Gananciales compuesta por estos.

La peticionaria alega, en síntesis, que es dueña en pleno dominio de una parcela de terreno localizada en el Barrio Florida del Municipio de Vieques y que los recurridos ocupaban una porción de aproximadamente una cuerda de terreno en la propiedad. Además, que estos ejecutaban actos de posesión en la misma sin autorización de la Administración y sin pagar canon o merced alguna, negándose a desalojar y entregar el predio. A esos efectos, solicitaron la reivindicación de la propiedad y el desahucio de los alegados invasores.

Por su parte, los recurridos alegaron que los terrenos ocupados habían sido poseídos por ellos y sus familiares antecesores por más de treinta años y que dicha posesión había sido pública, pacífica, de manera ininterrumpida y en concepto de dueño. Como defensa afirmativa, arguyen haber adquirido el dominio sobre la propiedad por virtud de una prescripción adquisitiva extraordinaria, mejor conocida como usucapión.

En respuesta a esa justificación, la peticionaria plantea que el término de 30 años requerido para el perfeccionamiento de la usucapión invocada por la familia Rivera Ortiz no se ha configurado. Ello, pues, durante 12 de los 30 años indicados, el terreno estuvo inscrito en el Registro de la Propiedad a favor del Gobierno de los Estados Unidos, contra quien, según alega la

Administración, no corre término de prescripción adquisitiva alguno.

Así pues, nos corresponde determinar en esta ocasión si el tiempo durante el cual el terreno perteneció al Gobierno de los Estados Unidos puede utilizarse para el cómputo del término de treinta años de posesión pública, pacífica, ininterrumpida y en concepto de dueño exigido por nuestro ordenamiento legal para la adquisición de un predio por vía de la usucapión extraordinaria.

I

La Administración y el Gobierno de los Estados Unidos de América, representado por el Administrador de la "General Services Administration", otorgaron el 8 de febrero de 1980 un documento titulado "Quitclaim Deed". En este, el Gobierno Federal renunciaba en beneficio de la Administración a todo derecho dominical o propietario sobre varios inmuebles allí especificados a cambio de un pago de $1,018,446.00.

Conforme al expediente, las propiedades objeto de controversia en el caso de autos fueron incluidas entre los terrenos adquiridos por la Administración, y constituyen parte de la finca registral Núm. 2245, inscrita a los Folios 795, 195 y 196. Los recurridos ocupan una porción, entre media cuerda y cuerda y media de terreno, en el inmueble antes descrito dentro de la parcela de 16 cuerdas, además de otro predio en la porción Norte donde se encuentra enclavada una estructura. Estas

propiedades se encuentran descritas de la siguiente manera:

>Parcela A- *"Rústica: Parcela de terreno localizada en el Barrio Florida del término municipal de Vieques, con una cabida de 16.00 cuerdas aproximadamente, equivalentes a 62,886.3300 metros cuadrados, en lindes: por el Norte, con la Carretera Estatal Número 200; por el Sur, Este y Oeste, con terrenos de la Administración de Terrenos".*

>Parcela B- *"Rústica: Parcela de terreno localizada en el barrio Florida del término municipal de Vieques, con una cabida superficial de cero punto siete mil setecientos setenta y seis (0.776) (sic) cuerda, equivalente a tres mil cincuenta y tres punto seis mil trescientos ochenta y cuatro (3,053.6384) metros cuadrados, en lindes: por el Norte con la zona marítima; por el Sur, con la Carretera Estatal PR-200; por el Este, con la zona marítima y la Carretera Estatal PR-200; y por el Oeste, con terrenos de la Administración de Terrenos de Puerto Rico. En dicha parcela enclava una estructura fabricada en pisos de losas de hormigón, con secciones de hormigón en dos niveles".*

Según reza la sentencia dictada por el foro primario, el negocio realizado mediante el "Quitclaim Deed" quedó condicionado a los derechos que tuvieran, si alguno, los poseedores u ocupantes de los terrenos transferidos, entre otras condiciones acordadas. Una vez consumado el contrato, la Administración inscribió el título de dominio a su favor sobre las fincas adquiridas en el Registro de la Propiedad.[2] Según las certificaciones registrales admitidas, el Gobierno de Estados Unidos adquirió por expropiación forzosa las fincas durante la década de 1940 mediante el caso United States of America, Petitioner v.

---

[2] Inscripción relativa a la Finca 1040, en el Folio 49 del Tomo 29 del Municipio de Vieques, Registro de la Propiedad, Sección de Fajardo.

<u>686.96 Acres of Land More or Less Situated in the Wards of</u> <u>Florida and Puerto Real, Municipality of Vieques, Puerto</u> <u>Rico, Josefina Bermúdez, et al. Defendants.</u>[3]

De acuerdo a las determinaciones de hecho a las que arribó el T.P.I., "[e]l Sr. Antonio Rivera Torres, padre del demandado poseyó y disfrutó ininterrumpidamente, en concepto de dueño en forma pública y pacífica el terreno reseñado **por más de sesenta y cinco (65) años** procediendo a venderle el 28 de octubre de 1981 a su hijo Ángel Rivera Morales, aquí demandado, la estructura antes descrita y cediendo cualquier derecho que tuviera o existiera sobre el terreno". (Énfasis suplido.)[4] Desde ese entonces, en la Parcela "A" se encuentra localizado el hogar de la familia Rivera Ortiz. Mientras que en la Parcela "B", se ubica una estructura de dos niveles la cual fue arrendada. Además, en esta propiedad guardan y atracan su bote de pesca.

Mediante la celebración del juicio en su fondo, los testigos presentados por la parte recurrida expresaron, de acuerdo a su conocimiento personal, diferentes aspectos que fueron determinantes para que el foro primario determinara que todos los requisitos de la prescripción

---

[3] Recayendo Sentencia el 6 de abril de 1942. Véase, Apéndice de la petición de *certiorari*, pág. 152.

[4] Véase, Sentencia del T.P.I., Apéndice de la petición de *certiorari,* pág. 152. Cabe señalar que se menciona al Sr. Antonio Rivera Torres en la página 3 del "Quitclaim Deed", bajo Parcel "B", Martineau Tract. En el Exhibit 9, estipulado por las partes, Certificación Registral de la Finca 1240, expedida el 27 de mayo de 2003, inscrita al Folio 40 del Tomo 29 del Municipio de Vieques. Específicamente en el Folio 48, se menciona al Sr. Antonio Rivera como colindante de la Parcela 54, por el Sur, para el 14 de marzo de 1942.

adquisitiva se habían cumplido. La Sra. Dolores Cruz Mercado testificó lo siguiente en cuanto a los padres del señor Rivera Morales:

.     .     .     .     .     .     .
.

P    ¿Qué edad tiene?

R    En dos meses cumplo ochenta años.

P    Ochenta años. Bien. Actualmente reside en Vieques me dijo, ¿no?

R    Sí.

P    ¿Y anteriormente dónde ha residido?

R    Siempre he residido en Vieques.

.     .     .     .     .     .     .
.

P    Bien.  Mire, le pregunto si usted conoce a los padres de don Ángel.

R    Sí, los conocí.

P    Los conocía.  ¿Desde cuándo usted conoce a, o sea, conocía a los padres de don Ángel?

R    Bueno, no voy a decir que desde que nací, porque hay un 'deso', pero desde pequeña.

P    ¿De pequeña, cuando dice pequeña?

R    Pequeña, cuando podía distinguir las personas de otros, como desde cinco años.

.     .     .     .     .     .     .
.

R    Pues tenía terrenos, tenía, sembraba de todo, guineos, criaba cerdos, cabros, reses. De todo como agricultor.

P    ¿Cómo agricultor?

R    Sí.

P    ¿Debo entender entonces que él tenía una finca?

R    Sí, él tenía una finca.

.    .    .    .    .    .    .
.

P    ¿Alguna vez don Antonio le mostró una escritura de propiedad?

R    No, a mí no, porque yo era una niña, pero a mi madre sí.

.    .    .    .    .    .    .
.

(Transcripción Vista en su Fondo, día 26 de febrero de 2008, Págs. 54-56, 62).

De la referida transcripción se desprende, que también acudió a testificar el Sr. Pascual De Jesús Carmona. Este tenía 80 años de edad y vivía en el Municipio de Vieques desde el año 1956 hasta el presente. Conviene puntualizar que en su testimonio afirmó que:

.    .    .    .    .    .    .

.

P    Bien. ¿Qué edad usted tiene?

R    Yo tengo ochenta años.

.    .    .    .    .    .    .

.

R    … Yo vine para Vieques en 1956.

P    ¿Y desde el 56 está viviendo en Vieques?

R    Correcto.

P    ¿Hasta el día de hoy?

R    Hasta el día de hoy.

P    Bien.  Le pregunto si usted conoce al aquí demandado, don Ángel Rivera.

R    Eso es así.

P     ¿Lo conoce?

R     Sí.

P     ¿Por motivo de qué lo conoce?

R     Bueno, desde que vine a Vieques, desde esa
      época.

P     ¿Desde esa época?

R     Correcto.

P     Le pregunto si sabe dónde ellos viven o
      residen.

R     Ellos viven en el mismo sitio donde ellos
      están viviendo ahora.

         .        .        .        .        .        .        .
                                    .

P     Está bien. ¿Sabe usted dónde vivía el papá
      de don Ángel Rivera?

R     Correcto.

P     ¿Dónde vivía?

R     En el barrio, allí mismo donde vive el
      señor Ángel Rivera.

         .        .        .        .        .        .        .
                                    .

P     Bien. Le pregunto si cuando usted pasa por
      esa carretera puede ver, se puede ver la
      casa de don Ángel.

R     Correcto, si está, se ve a la claridad.

         .        .        .        .        .        .        .
                                    .

(Transcripción Vista en su Fondo, día 1 de mayo
de 2008, Págs. 5-8).

La parte recurrida también sentó en la silla
testifical al Sr. Nazario Velázquez Rivera, quien tenía 68
años de edad y había residido toda la vida en el Municipio

de Vieques. A preguntas realizadas en el juicio en su
fondo afirmó:

.    .    .    .    .    .    .
.

P     ¿Desde cuándo conoce a don Ángel Rivera?

R     ¿A él?

P     Sí.

R     ¡Eah, rayo! Yo tenía ya unos catorce años,
      por ahí, cuando pasaba por la finca de
      ellos.

P     Okey.    ¿Cuándo usted dice: "La finca de
      ellos" a quién se refiere?

R     A ellos es para decirle, a él y el papá de
      él.

P     Ah, ¿el papá?

R     Sí.

P     Entonces, ¿usted conoció al papá de don
      Ángel?

R     Sí, señor.

P     ¿Sabe dónde vivía el papá de don Ángel?

R     Sí, donde está residiendo Angelito ahora.

P     Le pregunto si el papá de don Ángel Rivera
      vive en el día de hoy.

R     El papá está muerto.

.    .    .    .    .    .    .
.

P     Mire, le pregunto también lo siguiente: Esa
      finca donde reside Angelito, o perdone, el
      demandado, le pregunto si es una finca
      abierta al público.

.    .    .    .    .    .    .
.

R     No, porque hay una verja que prohíbe eso.

.        .        .        .        .        .        .
.

(Transcripción Vista en su Fondo, día 1 de mayo de 2008, Págs. 11-15).

A base de la prueba desfilada ante sí, el T.P.I. declaró No Ha Lugar la demanda presentada por la Administración y, a su vez, reconoció a los recurridos como únicos dueños de los terrenos ocupados y utilizados por estos.

No conteste con esa determinación, la Administración de Terrenos presentó un escrito de apelación ante el Tribunal de Apelaciones. Atendido el mismo, el 29 de marzo de 2011 el foro apelativo intermedio confirmó la sentencia apelada procedente del Tribunal de Primera Instancia.

Inconforme aún, la peticionaria acude ante este Tribunal mediante recurso de *certiorari* y plantea los siguientes errores:

> **Erró el Tribunal de Apelaciones al resolver que la parte recurrida había adquirido por usucapión extraordinaria, acreditando para ello un periodo aproximado de cuarenta (40) años durante el cual el inmueble pertenecía al Gobierno de los Estados Unidos, en abierta contravención a legislación federal que veda la institución de la usucapión y el ejercer actos de posesión sobre tierras pertenecientes al Gobierno de los Estados Unidos.**

> **Erró el Tribunal de Primera Instancia y el Tribunal de Apelaciones en la apreciación de la prueba documental al interpretar que las cláusulas del "Quitclaim Deed", otorgado entre el Gobierno Federal y la Administración de Terrenos, contenían una reserva de derechos que beneficiaba a los demandados.**

Luego de examinar la petición presentada por la Administración de Terrenos, el 5 de agosto de 2011

expedimos el auto solicitado. Concedimos un término a ambas partes para que presentaran sus respectivos alegatos. Así lo hicieron. Contando con el beneficio de sus comparecencias procedemos a resolver.

II

*A. La prescripción adquisitiva o usucapión*

En nuestro ordenamiento jurídico, la propiedad y los demás derechos sobre los bienes pueden obtenerse por vía de la prescripción adquisitiva o usucapión. Art. 549 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 1931; Art. 1830 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5241.[5] El efecto principal de la usucapión es la adquisición del dominio. Por tanto, una vez transcurrido la totalidad del término fijado en nuestro ordenamiento, de inmediato se materializa o consolida el dominio en la persona, que en unión a sus anteriores dueños, ha poseído durante ese periodo con los requisitos de ley. Ex parte Reyes; Rodríguez, Opositora, 68 D.P.R. 854 (1948). La prescripción adquisitiva se bifurca en dos modalidades, a saber: la ordinaria y la extraordinaria. J.R. Vélez Torres, Curso de Derecho Civil: los bienes, los derechos reales, Madrid, Offirgraf, S.A., T. II, 1983, pág. 265.

La primera de las modalidades reseñadas "se caracteriza por la necesidad de justo título y la buena fe del poseedor". Id. El concepto de buena fe consiste en la

---

[5] El Art. 1830 del Código Civil, 31 L.P.R.A. sec. 5241, establece que "[p]or prescripción se adquieren, de la manera y con las condiciones determinadas en la ley, el dominio y demás derechos reales".

creencia del poseedor de que la persona de quien recibió la cosa era dueña de ella y que podía transmitir su dominio. Art. 1850 del Código Civil, 31 L.P.R.A. sec. 5271; Sol Bravman v. Consejo de Titulares del Condominio Palma Real, 2011 T.S.P.R. 189, pág. 7, 183 D.P.R. ____, (2011).[6]

Por su parte, el justo título se define como aquel que es legalmente suficiente para transferir el dominio o derecho real de cuya prescripción se trate. Artículo 1852 del Código Civil, 31 L.P.R.A. sec. 5273. Según Vázquez Bote, el plazo o término de tiempo requerido para que se adquiera la propiedad mediante la prescripción ordinaria es distinto, dependiendo de si se trata de bienes muebles o inmuebles. "Para los muebles, el art. 1.855, C.c., establece un plazo de tres años, mientras que, tratándose de inmuebles, es necesaria una posesión de diez años -si es entre presentes-, y de veinte, si es entre ausentes". E. Vázquez Bote, Derecho Privado Puertorriqueño, New Hampshire, Equity Publishing Company, 1991, T. VII, Vol. 1, pág. 380; Art. 1855 del Código Civil, 31 L.P.R.A. sec. 5276.

Por otro lado, la prescripción adquisitiva en su modalidad extraordinaria "se caracteriza por la inexistencia de estos requisitos que se suplen por la exigencia de un plazo más largo de posesión". Vélez Torres, *supra*. Por ser pertinente al caso de marras, nos

---

[6] Véanse, además, Ramos v. Ríos, 79 D.P.R. 738, 740-741 (1956); Rivera v. Meléndez, 72 D.P.R. 432, 439-440 (1951).

enfocaremos únicamente en la prescripción adquisitiva de naturaleza extraordinaria. Veamos.

La prescripción adquisitiva extraordinaria encuentra su base estatutaria en el Art. 1859 del Código Civil, 31 L.P.R.A. sec. 5280. Este articulado dispone que "[p]rescriben también el dominio y demás derechos reales sobre los bienes inmuebles por su posesión no interrumpida durante treinta (30) años, sin necesidad de título ni de buena fe, y sin distinción entre presentes y ausentes". Véase, también, Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154, 182 (2005). Este efecto se produce automáticamente en el momento en que el poseedor completa el periodo requerido.[7] En términos sucintos, nuestros pronunciamientos jurisprudenciales han establecido lo siguiente:

> para que se produzca la prescripción extraordinaria que establece el Art. 1859 del Código Civil de Puerto Rico [supra], deben exigir nuestros tribunales de justicia la prueba de los siguientes hechos: (1) una posesión continuada durante treinta años sobre el inmueble; (2) por haberla así tolerado el dueño del inmueble; (3) ya que el prescribiente ha entrado en posesión del inmueble sin autorización, permiso o licencia otorgados por el dueño o en virtud de contrato celebrado con el dueño; (4) cuya posesión ha mantenido el poseedor en concepto público de dueño, de acuerdo con la creencia colectiva de la comunidad en que vive, no en virtud de la creencia propia que pueda tener el poseedor de ser el dueño del inmueble poseído y (5) cuya posesión resulte además pública, pacífica y (6) sin que se haya interrumpido naturalmente, o sea, por abandono de la cosa por el poseedor, por más de un año, o civilmente, en virtud de

---

[7] J. Puig Brutau, Fundamentos de Derecho Civil, Tomo III, Vol. 1, 4ta ed., Bosch, Barcelona, 1994, pág. 327.

diligencia judicial o notarial, o por un reconocimiento expreso o tácito del derecho del dueño hecho por el poseedor, antes de haber transcurrido los treinta años durante los cuales se consuma la prescripción, y (7) sin que el poseedor haya renunciado expresa o tácitamente a su título por prescripción por alguna causa que resulte eficaz en derecho para tal renuncia, después de consumada la prescripción extraordinaria. Dávila v. Córdova, 77 D.P.R. 136, 150-151 (1954).

Empero, el tipo de posesión requerida para adquirir el dominio de un bien inmueble mediante usucapión es la denominada posesión civil y no la natural. Sucn. Maldonado v. Sucn. Maldonado, supra. El Art. 630 del Código Civil, 31 L.P.R.A. sec. 1421, define "posesión natural" como la tenencia de una cosa o el disfrute de un derecho, y "posesión civil" como la tenencia de una cosa o el disfrute de un derecho, unidos a la intención de hacer suya la cosa o el derecho.

Por lo tanto, la usucapión requiere que la posesión sea en concepto de dueño porque "sólo la posesión en concepto de dueño puede servir de título para adquirir el dominio". Sol Bravman v. Consejo de Titulares del Condominio Palma Real, supra, pág. 8, citando a J. Puig Brutau, Fundamentos de Derecho Civil, Tomo III, Vol. 1, 3ra ed., Bosch, Barcelona, 1989, pág. 318. Se concibe que un inmueble es poseído en concepto de dueño cuando la opinión pública o percepción general entiende que es el verdadero dueño, unido a los actos que el poseedor realiza con relación a la propiedad, independientemente de la creencia

que sobre el particular este pueda tener. <u>Vélez Cordero v. Medina</u>, 99 D.P.R. 113, 119 (1970).

Como corolario de la doctrina, los actos ejecutados por licencia o mera tolerancia del dueño no son suficientes para que se cumpla con los requisitos de la prescripción extraordinaria puesto que no se configura la posesión en concepto de dueño. Así pues, todo aquel que posea con permiso, autorización o en representación de otro no podrá adquirir el dominio, ni ningún otro derecho por virtud de la prescripción ordinaria o extraordinaria. <u>Sol Bravman v. Consejo de Titulares del Condominio Palma Real</u>, supra; <u>Sánchez González v. Registrador</u>, 106 D.P.R. 361, 375 (1977); <u>Dávila v. Córdova</u>, supra, págs. 143-148.

Ahora bien, el efecto consumado de la usucapión no será posible si se interrumpe el término o plazo mediante el cual se posee la cosa o derecho en concepto de dueño de forma pública y pacífica. Con respecto a la interrupción, el Art. 1843 del Código Civil, 31 L.P.R.A. sec. 5264, específicamente establece que la "posesión se interrumpe para los efectos de la prescripción, natural o civilmente".

A estos efectos, se interrumpe civilmente la posesión: (1) por la citación judicial hecha al poseedor, aunque sea por mandato del tribunal o un juez incompetente; (2) mediante el requerimiento judicial o notarial, siempre que dentro de los dos meses de practicado se presente ante el tribunal o el juez la

demanda sobre posesión o dominio de la cosa cuestionada, y (3) por el reconocimiento expreso o tácito que el poseedor haga del derecho del dueño. Véanse, Arts. 1845, 1847 y 1848 del Código Civil, 31 L.P.R.A. secs. 5266, 5268 y 5269.

Por otro lado, nuestro Código Civil dispone que contra un título inscrito en el Registro de la Propiedad no tendrá lugar la prescripción ordinaria. Esto, desde luego, no es así en la prescripción extraordinaria de treinta años. Sucn. Rosa v. Sucn. Jiménez, 77 D.P.R. 551 (1954). De no interrumpirse el término prescriptivo para la prescripción adquisitiva, el usucapiente adquirirá el dominio de la cosa. Al consumarse la usucapión, la doctrina sostiene que la actuación del usucapiente adquiere eficacia retroactiva al momento en que este inició la posesión con sus requisitos necesarios, mientras que los actos realizados por el poseedor anterior quedan resueltos. M. Albaladejo, Comentarios al Código Civil y Compilaciones Forales, Tomo XXV, vol. 1, EDERSA, Madrid, 1993, págs. 247-248.

De igual forma, mientras el usucapiente reclama el dominio a su favor sobre el bien usucapido, se extingue correlativamente el derecho del antiguo titular. Id., pág. 251. Si el usucapiente reunió todos los requisitos señalados por ley, la usucapión consumada es inatacable. Id., pág. 254. Es decir, no puede oponérsele circunstancia adversa posible, por lo que las partes adversamente

afectadas por una prescripción adquisitiva deben asumir las consecuencias legales de su inacción.

Analizado el marco jurídico que alberga la figura de la usucapión, pasemos a examinar los preceptos reconocidos en nuestro ordenamiento jurídico, así como los pronunciamientos jurisprudenciales que regulan la prescripción adquisitiva en terrenos pertenecientes al Gobierno Federal en Puerto Rico.

*B. La doctrina de nullum tempus occurit regi*

Es doctrina reiterada que los estatutos que regulan la adquisición de títulos por vía de la prescripción adquisitiva no corren contra el Gobierno Federal de los Estados Unidos. Esta norma quedó establecida por disposición expresa de ley en el Título 48 del United States Code, el cual dispone lo siguiente:

> On and after March 27, 1934, no prescription or statute of limitations shall run, or continue to run, against the title of the United States to lands in any territory or possession or place or territory under the jurisdiction or control of the United States; and no title to any such lands of the United States or any right therein shall be acquired by adverse possession or prescription, or otherwise than by conveyance from the United States. 48 U.S.C. sec. 1489.

El citado estatuto consagra la máxima anglosajona *nullum tempus occurit regi* (el tiempo no corre contra el rey soberano). Esta norma tiene sus orígenes en el derecho medieval inglés. La misma se fundamentaba en consideraciones de política pública, pues mientras el Rey se encuentra ocupado trabajando por el bienestar de sus súbditos, el público no debe sufrir por la negligencia de

sus sirvientes". <u>United States v. Thompson</u>, 98 U.S. 486, 489 (1879).[8] Sin embargo, ya para el siglo XVII este derecho absoluto fue erosionándose. Un ejemplo de ello es que la Corona perdió todo derecho a reclamar sus bienes de un usucapiente si hubiera transcurrido un plazo de posesión de 60 años.[9] Finalmente, con la aprobación de la Crown Suits Act en 1769, también conocida como la Ley Nullum Tempus, se reiteró la inaplicabilidad de la doctrina respecto a las tierras de la Corona.[10]

Empero, en los Estados Unidos se ha retornado a la versión medieval inglesa de *nullum tempus*. Esto es, se colocó al soberano en posición de privilegio, contrario a los desarrollos más recientes de la doctrina en el Derecho común inglés.[11] Así pues, se hizo extensiva esta figura a terrenos pertenecientes al Gobierno Federal. No obstante, su aplicación no ha sido de forma absoluta. Existen dos excepciones, sujetas a ciertas condiciones, en las que el Congreso ha permitido la usucapión de terrenos federales.

La primera quedó establecida en el *Conveyances to Occupants of Unpatented Mining Claims*, 30 U.S.C. ss 701-709

---

[8] Véase, también, <u>Developments in the Law- Statutes of Limitations</u>, 63 Harv. L. Rev. 1177, 1251 (1950).

[9] Véanse, nota al calce núm. 4 de <u>Ayala v. Autoridad de Tierras de Puerto Rico</u>, 116 D.P.R. 337 (1985); IV Holdsworth, <u>A History of English Law</u>, 484, 525 (1966). Cabe señalar que con la aprobación de la Limitation Act of 1939, Sec. 4, el término para reivindicación por la Corona se redujo a treinta años.

[10] Id.; I Blackstone, <u>Commentaries on the Laws of England</u>, 368 n. 7 (1916).

[11] Id.; H.G. Wood, <u>A Treatise on the Limitation of Actions at Law and in Equity</u>, 3ra ed., Boston, The Boston Book Company, 1901, pág. 3 y ss.; H.W. Ballantine, <u>Title by Adverse Possession</u>, 32 Harv. L. Rev. 135 (1918); <u>Stanley v. Schwalby</u>, 147 U.S. 508 (1893).

(1994). Esta excepción favorece a los mineros que adquieran un derecho de posesión (limitado a la extracción de depósitos minerales) y que hayan establecido en estas tierras su lugar principal de residencia por no menos de siete años antes del 23 de julio de 1962, sujeto al pago mínimo de $5 por cuerda.

De igual modo, el *Lands Held Under Color of Title Act*, 43 U.S.C. 1068 (1994), provee para que aquellas personas que reclamen que han poseído un terreno con una extensión de no más de 160 cuerdas, por un periodo de 20 años o más, de buena fe y pacíficamente, o con título, y que hayan hecho mejoras en el mismo o dedicado alguna parte de este a la agricultura, podrán hacer suyo el terreno usucapido por un pago de no menos de $1.25 por cuerda.

Respecto a la aplicación de la máxima de *nullum tempus* en Puerto Rico, esta tuvo su origen en <u>Pueblo v. Dimas et al.</u>, 18 D.P.R. 1061 (1912). En ese caso, la controversia giraba en torno a si se podían usucapir terrenos ganados por la desecación de unos manglares. El Tribunal determinó que no, utilizando como base lo dispuesto en el Art. 9 del Código Político, el cual disponía expresamente que "[n]o podrá adquirirse títulos a terrenos baldíos estaduales por posesión adversa, o contraria al título de otra u otras personas". 1 L.P.R.A. sec. 6.

Como ulterior fundamento, y a modo de *dictum*, el Tribunal incorporó la máxima *nullum tempus occurit regi* a nuestro ordenamiento jurídico. Consecuentemente, a partir

de <u>Pueblo v. Dimas et al.</u>, supra, la jurisprudencia se nutrió de una gama de casos por los cuales la doctrina fue ampliada a niveles preocupantes, en ocasiones, en clara contravención a los postulados sobre prescripción adquisitiva de nuestro Código Civil.

Así por ejemplo, en <u>Pueblo v. Municipio de San Juan</u>, 19 D.P.R. 656, 666-667 (1913), amparándose en lo resuelto en <u>Pueblo v. Dimas</u>, supra, el Tribunal expresó: "Cuando la nueva soberanía comenzó, es evidente que el demandado no había adquirido por prescripción derecho alguno, y, después de comenzada, dicho medio de adquisición de propiedad no estaba autorizado en contra de los Estados Unidos, ni en contra de Puerto Rico".

De igual forma, en <u>Pueblo v. Rojas</u>, 53 D.P.R. 121, 136 (1938), resolvimos que "…a partir de 1898 la prescripción adquisitiva, de acuerdo con lo resuelto por este Tribunal en El Pueblo v. Dimas et al...no puede alegarse en contra de El Pueblo de Puerto Rico...".

Finalmente, en <u>Ayala v. Aut. de Tierras de P.R.</u>, 116 D.P.R. 337, 345 (1985), aclaramos que el derecho vigente permite la usucapión contra bienes patrimoniales del Estado, a menos que se trate de terrenos baldíos conforme a lo dispuesto en el Art. 9 del Código Político, *supra*. Así pues, quedaron revocadas nuestras decisiones previas, en cuanto expandían la doctrina de *nullum tempus* más allá del

limitado alcance del Art. 9 del Código Político.[12] En esa ocasión, hicimos alusión a las expresiones vertidas en el voto separado del Juez Asociado señor Hernández Matos en E.L.A. v. Tribunal Superior, 97 D.P.R. 644, 672 (1969):

> El transcrito Art. 9 del Código Político, en su última oración, en términos claros y precisos, limita la prohibición de adquirir títulos contra el Estado por posesión adversa, a terrenos baldíos insulares solamente.
>
> Sin duda alguna, tal prohibición fue establecida en ese artículo para evitar que el usurpador de terrenos baldíos alegara como defensa la prescripción. Al reducir su ámbito objetivo a terrenos baldíos tal prohibición restringida jamás podría entenderse como una de general aplicación respecto a los bienes patrimoniales del Estado.

Ahora bien, en el ámbito federal, y en cuanto a tierras pertenecientes al Gobierno Federal de los Estados Unidos se refiere, el trato es diferente. Pues "cuando los Estados Unidos se hace acreedor a un reclamo, actuando en su capacidad de gobierno, y afirma su pretensión en ese derecho, no puede considerarse que ha abdicado de su autoridad gubernamental a fin de ser objeto de una ley estatal que pone un límite de tiempo a la ejecución de su derecho". (Traducción nuestra.) U.S. v. Summerlin, 310 U.S. 414, 417 (1940).

Claro está, amerita indicar que lo antes expuesto no siempre fue el derecho vigente en nuestra jurisdicción. Más bien, la Corte de Apelaciones de los Estados Unidos para el

---

[12] Entre las decisiones revocadas se encuentran: El Pueblo v. Municipio de San Juan, 19 D.P.R. 656, 667 (1913); Miranda v. Municipio de Aguadilla, 39 D.P.R. 467, 470 (1929); Pueblo v. Rojas, 53 D.P.R. 121, 136 (1938); Gobierno de la Capital v. Casino Español, 56 D.P.R. 790, 801 (1940) y Jiménez v. Municipio, 70 D.P.R. 517, 521 (1949).

Primer Circuito, en su decisión <u>Porto Rico v. Fortuna Estates</u>, 279 F.2d 500 (1er Cir. 1922), había resuelto que los terrenos del Gobierno Federal en Puerto Rico estaban sujetos a la prescripción adquisitiva por virtud de la Sec. 8 del *Acta Orgánica Foraker*, 31 Stat. 77, 79 (1900). Esta disposición legal establecía lo siguiente:

> ...the laws and ordinances of Puerto Rico now in force shall continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this Act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative.

Interpretando liberalmente el estatuto reseñado, la decisión de la Corte de Apelaciones de Estados Unidos, para el Primer Circuito de 1922 resolvió que tal disposición constituía una aceptación tácita por parte de los Estados Unidos para que sus propiedades sitas en la jurisdicción de Puerto Rico fuesen gobernadas por nuestras leyes de propiedad, incluyendo las disposiciones del Código Civil de Puerto Rico referentes a la prescripción adquisitiva.[13] <u>U.S. v. Hato Rey Bldg. Co., Inc.</u>, 886 F.2d 448, 450 (1er Cir. 1989).

---

[13] La única expresión al efecto por parte de este Tribunal, curiosamente, también se encuentra en el voto particular del Juez Asociado señor Hernández Matos en <u>E.L.A. v. Tribunal Superior</u>, 97 D.P.R. 644, 741 (1969). En este, el Juez Asociado mencionado sugirió que, aunque los Estados de la Unión Americana carecen de poderes para adoptar las normas de prescripción contra los bienes inmuebles del gobierno federal- por virtud de la doctrina *nullum tempus*- la referida norma puede exceptuarse cuando los Estados Unidos consiente a estar sujeto al estatuto local de prescripción. Descansando mayormente en <u>Porto Rico v. Fortuna Estates</u>, 279 F.2d 500 (1er Cir. 1922), el voto particular indicado arribó a la conclusión de que nuestro derecho de

No obstante, 20 años después, la Corte de Apelaciones Federal para el Primer Circuito revocó su decisión emitida en Porto Rico v. Fortuna, supra. Esto a base de la promulgación de la Ley 600 de 1950, conocida como la Ley de Relaciones Federales con Puerto Rico, 64 Stat. 320 (1950). U.S. v. Hato Rey Bldg. Co., Inc., supra, pág. 451. Dicha ley revocó aquellas disposiciones del Acta Foraker y la Ley Jones[14] que sirvieron de fundamento para que se interpretara que el Gobierno de los Estados Unidos había prestado su anuencia a que sus propiedades sitas en Puerto Rico fuesen gobernadas por nuestras leyes que regulan la prescripción adquisitiva. Id. En relación a esta disposición, el tribunal expresó:

> This provision is crucial to the finding of the *Fortuna Estates* court that the United States had sanctioned the acquisition of a prescriptive title against it. **Thus, at least to possessions occuring after 1950, *Fortuna Estates* is no longer applicable.** As the Salgados and Hato Rey recorded their title after 1950, they cannot acquire title against the United States through adverse possession.
>
> **Hato Rey arguably could claim title by virtue of Salgado's possession before 1950. However, without recorded title, Hato Rey could only prevail if the Salgados claimed possession "in the capacity of an owner, public, peaceful, and uninterrupted" for a period of thirty years.** Puerto Rico Civil Code Articles 1841 and 1859, 31 L.P.R.A. §§ 5262 and 5280 (1968). (Énfasis suplido.) Id.

Como resultado, las interpretaciones jurisprudenciales federales vigentes conciben que los predios federales sitos en Puerto Rico no están sujetos a

---

prescripción adquisitiva corría en contra o a favor del Gobierno Federal. E.L.A. v. Tribunal Superior, supra, pág. 744.

[14] 39 Stat. 951, 968 (1917).

usucapión, exceptuando aquellos terrenos poseídos de forma pública, pacífica e ininterrumpida por un periodo de treinta años con anterioridad al año 1950.

Con estos principios como norte, procedemos a atender la controversia que nos ocupa.

### III

En el presente caso, la peticionaria presentó una acción de desahucio alegando ser dueña de las propiedades en controversia. Alegó, además, que los recurridos ocupan una porción de dicho terreno en precario, realizando actos de posesión y negándose a desalojar el mismo. La parte recurrida negó los hechos y alegó, en respuesta, que los terrenos ocupados han sido poseídos por ellos y sus familiares antecesores por más de treinta años, cumpliendo con los requisitos para que se consumara la usucapión.

Por su parte, la Administración de Terrenos arguye que erraron tanto el foro de instancia como el Tribunal de Apelaciones al determinar que los recurridos adquirieron los terrenos en controversia por vía de prescripción adquisitiva. Esto, pues estaban impedidos de contar el periodo de aproximadamente cuarenta años durante el cual el Gobierno de los Estados Unidos era dueño del inmueble. No le asiste la razón. Veamos.

Acorde con lo intimado, aquel que pretende demostrar que ha poseído con efectos de usucapir, deberá probar que esta posesión fue desplegada de forma pública, pacífica, ininterrumpida y en concepto de dueño.

Convenimos con el Tribunal de Primera Instancia que la evidencia demostró que los inmuebles en contienda pertenecen a la familia de los demandados hoy recurridos y que los han poseído de forma pública, pacífica, ininterrumpida y en concepto de dueño por casi un siglo. De acuerdo a las determinaciones de hechos del foro primario, "[e]l Sr. Antonio Rivera Torres, padre del demandado poseyó y disfrutó ininterrumpidamente, en concepto de dueño, en forma pública y pacífica el terreno reseñado por más de sesenta y cinco (65) años procediendo a venderle el 28 de octubre de 1981 a su hijo Ángel Rivera Morales, aquí demandado, la estructura antes descrita y cediendo cualquier derecho que tuviera o existiera sobre el terreno"[15].

Cónsono con lo anterior, nuestro punto de partida al determinar cuándo comenzó la posesión del señor Rivera Torres debe ser, como mínimo, el año 1916. Estos inmuebles han sido utilizados y poseídos sin interrupción por los antecesores de los recurridos, y luego por estos, para establecer su residencia, para la pesca y la crianza de animales, por mucho más de 30 años.

El foro primario evaluó la prueba documental, y determinó que no se había presentado evidencia a los efectos de que se interrumpiera adecuadamente la posesión pacífica y a título de dueño llevada a cabo por los antecesores de los recurridos. De ningún lugar del

---

[15] Véase, nota al calce núm. 4, *ante*.

expediente se desprende que se haya citado judicialmente al señor Rivera Torres; ni que se le haya extendido un requerimiento judicial ni notarial; ni que este haya reconocido expresa o tácitamente el derecho como dueño de tanto el Gobierno Federal de los Estados Unidos o de la Administración de Terrenos de Puerto Rico.

En apoyo de su contención, el foro primario evaluó los testigos presentados por la parte recurrida. Estos eran residentes de Vieques y testificaron sobre su conocimiento de la posesión de más de treinta años del señor Rivera Torres. Es norma reiterada que un tribunal apelativo no intervendrá con la apreciación que de la prueba haya hecho un Tribunal de Primera Instancia, en ausencia de pasión, prejuicio o error manifiesto. Rivera Menéndez v. Action Service Corp., 2012 T.S.P.R. 73, pág. 14, res. el 13 de abril de 2012, 185 D.P.R. ___ (2012); S.L.G. Rivera Carrasquillo v. A.A.A., 177 D.P.R. 345, 356 (2009); Belk v. Martínez, 146 D.P.R. 215, 232 (1998).

La razón de esta normativa es obvia, pues es el juzgador de los hechos quien observa el comportamiento de los testigos al momento de declarar, lo cual constituye un aspecto de vital importancia al momento de adjudicar credibilidad. S.L.G. Rivera Carrasquillo v. A.A.A., supra, pág. 357; Flores v. Sociedad de Gananciales, 146 D.P.R. 45 (1998).

Por otro lado, la peticionaria alega que el gobierno Federal mediante el caso United States of America,

Petitioner v. 686.96 Acres of Land More or Less Situated in the Wards of Florida and Puerto Real, Municipality of Vieques, Puerto Rico, Josefina Bermúdez, et al. Defendants; por sentencia de 6 de abril de 1942, supra, adquirió los terrenos aquí en controversia, los cuales eran poseídos y ocupados por el Sr. Antonio Rivera Torres, desde mucho antes de 1940.

Empero, según la prueba desfilada por la Administración de Terrenos, existe ausencia total de evidencia que acredite que el padre del aquí recurrido fuera parte del caso antes citado, que haya sido emplazado, o que se haya realizado pago alguno por concepto de indemnización o justa compensación por los terrenos alegadamente expropiados. El Tribunal de Primera Instancia estableció:

> No se ha sometido ante este tribunal evidencia que acredite que el Gobierno de los Estados Unidos o cualesquiera de sus instrumentalidades o dependencias hayan expropiado de acuerdo a derecho terreno alguno al Sr. Antonio Rivera Torres, padre del demandado, Ángel Rivera Morales, o que hayan realizado pago alguno por indemnización por los terrenos que el Sr. Antonio Rivera Torres poseía, ocupaba y disfrutaba. Tampoco se ha sometido evidencia de que fuera emplazado.[16]

Conocido es que el emplazamiento y/o notificaciones a la parte demandada de que se ha presentado una acción en su contra son componente básico y sustantivo del debido proceso de ley. Tanto la Quinta Enmienda de la Constitución

---

[16] Véase, determinación de hechos núm. doce (12) del Tribunal de Primera Instancia, Sala de Fajardo dictada el 28 de diciembre de 2009. Apéndice de la petición de *certiorari*, pág. 152.

de los Estados Unidos[17] como el Artículo II, Sección 9 de la Constitución de Puerto Rico[18] le conceden al gobierno federal y al estatal, respectivamente, la potestad de expropiar propiedad privada para uso público; pero claramente se establece que tiene que ser mediante justa compensación, situación que en este caso no hay evidencia de que haya sucedido.

Respecto a la aplicación de la doctrina de *nullum tempus occurit regi* al caso de autos, acogemos la interpretación establecida en U.S. v. Hato Rey Bldg. Co., supra. Esto es, que previo al 1950 y la aprobación de la Ley 600, Estados Unidos aceptó tácitamente por vía de la Sec. 8 del Acta Orgánica Foraker, recogida en la Ley Jones, el que sus propiedades sitas en la jurisdicción de Puerto Rico fuesen gobernadas por nuestras leyes de propiedad, incluyendo las disposiciones del Código Civil de Puerto Rico referentes a la prescripción adquisitiva.

A la luz de lo anterior, resulta forzoso concluir que a la fecha de aprobación de la Ley 600, *supra*, ya el Sr. Antonio Rivera Torres había adquirido el dominio y la titularidad de los terrenos en controversia pues había poseído los mismos de forma pública, pacífica, ininterrumpida y en concepto de dueño por un periodo de aproximadamente **34** años, tomando en cuenta que la misma comenzó en el 1916.

---

[17]  Enmda. V, Const. EE.UU., L.P.R.A., Tomo 1.

[18]  Art. II, Sec. 9, Const. de P.R., L.P.R.A., Tomo 1.

Conviene puntualizar que reiteramos lo resuelto en Ayala v. Aut. de Tierras de P.R., supra, en tanto resuelve que el Estado está impedido de invocar la máxima *nullum tempus occurit regi* para evadir las disposiciones de nuestro Código Civil que establecen que la prescripción adquisitiva opera contra sus bienes patrimoniales y los de sus municipios.

Resta por determinar si erraron los foros recurridos en la apreciación de la prueba documental al interpretar que las cláusulas del "Quitclaim Deed", otorgado entre el Gobierno Federal y la Administración de Terrenos, contenían una reserva de derechos que beneficiaba a los demandados. Según el negocio realizado, este quedó condicionado a los derechos que tuvieron, si alguno, quienes fueron poseedores u ocupantes en los terrenos transferidos, entre otras condiciones acordadas.

Si bien es cierto que la cláusula fue redactada en términos generales y no identifica a los poseedores expresamente, compartimos el criterio del foro apelado en cuanto a que esta garantizó y condicionó la ejecución del "Quitclaim Deed" a que se protegieran los derechos de terceras personas en posesión de terrenos allí incluidos. En efecto, no se ofreció evidencia en la que se notificara a los recurridos sobre su participación en cualquier negociación con el fin de defender sus derechos.

Cabe señalar, que la Administración no puede arrogarse la protección que dispone el Art. 105 de la Ley

Hipotecaria, 30 L.P.R.A. sec. 2355, al tercero registral. A estos efectos, el Art. 107 de la referida ley dispone lo siguiente:

> El tercero que adquiere protegido por el art. 105 de esta ley el dominio o cualquier derecho real que implique posesión, quedará amparado por la fe pública registral frente a un usucapiente, bien sea por prescripción ordinaria o extraordinaria, si desconocía la usucapión consumada o en curso a favor de persona distinta de su transmitente, **y si dentro de un año luego de la adquisición interpone acción judicial adecuada para negar los efectos de la usucapión consumada antes de la adquisición o dentro de dicho plazo. Transcurrido dicho término cesará para el tercero la protección concedida en este artículo y se juzgará el título y se contará el tiempo con arreglo a la legislación civil...**

En el caso de autos, no fue hasta el 1998, es decir 18 años luego de inscrito el título a su favor, que la peticionaria acudió a los tribunales para negar los efectos de la usucapión consumada a favor de los recurridos. Asimismo, y como establecimos anteriormente, ya estos habían adquirido todos los derechos reales sobre la cosa desde el 1946.

IV

Por los fundamentos antes expuestos, confirmamos la Sentencia procedente del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Administración de
Terrenos

Peticionaria

                                                Certiorari

          v.

Ángel Rivera Morales,              CC-2011-0339
   Margarita Ortiz
Carrasquillo, por sí y en
  representación de la
  Sociedad Legal de
Gananciales que juntos
componen; Barry Duncan

      Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 22 de octubre de 2012.


        Por los fundamentos antes expuestos, confirmamos la Sentencia procedente del Tribunal de Apelaciones.

        Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo